**FILED**

October 08, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: __Christian Rodriguez__

DEPUTY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| JULIO DEL RIO, JACK MURPHY, and STEVEN BIXBY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CROWDSTRIKE, INC.,<br><br>        Defendant. | Case No. 1:24-cv-00881-RP<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |
| CHRISTOPHER HARLAN and SARA HARLAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>CROWDSTRIKE HOLDINGS, INC., and CROWDSTRIKE, INC.,<br><br>        Defendants. | Case No. 1:24-cv-00954-RP<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' MOTION TO
CONSOLIDATE CASES AND APPOINT INTERIM CLASS LEADERSHIP**

## I.    Introduction

Pursuant to Federal Rule of Civil Procedure ("FRCP") 42(a) and 23(g), Plaintiffs Julio del Rio, Jack Murphy, Steven Bixby, Christopher Harlan, and Sara Harlan (collectively, "Plaintiffs") seek an Order from this Court consolidating *del Rio, et al. v. CrowdStrike, Inc.*, No. 1:24-cv-00881-RP (the "*del Rio* Action") and *Harlan et ano v. CrowdStrike Holdings, Inc. et ano*, No. 1:24-cv-00954-RP (the "*Harlan* Action") (together, the "Related Actions"); appointing Ben Barnow of Barnow and Associates, P.C. and Rob Shelquist of Lockridge Grindal Nauen PLLP ("Proposed Interim Co-Lead Class Counsel") as Interim Co-Lead Class Counsel; and appointing Cory S. Fein of Cory Fein Law Firm, Warren T. Burns of Burns Charest LLP, Charles J. LaDuca of Cuneo Gilbert & LaDuca, LLP, and J. Barton Goplerud of Shindler, Anderson, Goplerud & Weese, P.C. (together, "Proposed Executive Committee Members") as Plaintiffs' Executive Committee Members.

Consolidating the Related Actions is appropriate to ensure convenience, judicial economy, cost reduction, and serve the best interests of the putative class. The Related Actions arise from the same nucleus of common facts and name a common defendant. Consolidation will provide for complete resolution in one proceeding and avoid unnecessary duplication and the risk of inconsistent adjudications. The Related Actions are both in their infancy, as each is in the pleading stage with no responses having been filed to the complaints. Neither of the Related Actions have progressed to the point where any efficiencies or benefits will be forfeited through consolidation. Consolidating the Related Actions for all purposes will provide all the benefits of consolidation and promote the interests of judicial economy and convenience, with no prejudice to the parties or to the putative class and subclasses.

As discussed below, Proposed Interim Co-Lead Class Counsel have worked to investigate and advance this litigation, are highly experienced in class action and complex litigation, have a

deep knowledge of the applicable law, and have the time and resources necessary to successfully advance this litigation and adequately represent the class. Proposed Executive Committee Members are also highly knowledgeable and experienced, and are prepared to work efficiently and cooperatively to further the interests of the putative class. For these reasons and those that follow, Ben Barnow of Barnow and Associates, P.C. and Rob Shelquist of Lockridge Grindal Nauen PLLP should be appointed Interim Co-Lead Class Counsel, and Cory S. Fein of Cory Fein Law Firm, Warren T. Burns of Burns Charest LLP, Charles J. LaDuca of Cuneo Gilbert & LaDuca, LLP, and J. Barton Goplerud of Shindler, Anderson, Goplerud & Weese, P.C. should be appointed as Plaintiffs' Executive Committee Members.

Counsel for Plaintiffs conferred with counsel for CrowdStrike regarding potential consolidation of this litigation at their initial conference on August 28, 2024, and requested CrowdStrike's position on the Motion by email several times. To date, CrowdStrike has not informed Plaintiffs of its position on consolidation or the appointment of interim class leadership.

## II.    Facts and Procedural History

CrowdStrike[1] is a cybersecurity firm that offers cybersecurity services and products, including its Falcon software security platform. Plaintiffs allege that on July 19, 2024, CrowdStrike released a flawed security update for its Falcon platform without adequate testing which caused a global outage of many of CrowdStrike's customers' computer systems (the "CrowdStrike Outage"). In short, the flawed update caused affected computers to experience an error which rendered the computers inoperable until the flawed update was deprecated or otherwise reversed. The CrowdStrike Outage had a devastating impact particularly on CrowdStrike's airline customers, as computer system outages forced airlines to cancel or delay thousands of flights on

---

[1] "CrowdStrike" refers to Defendants CrowdStrike, Inc. and CrowdStrike Holdings, Inc.

July 19, 2024, and in the days that followed. Many travelers were stranded in airports, often thousands of miles from their destination, for hours or days as the CrowdStrike Outage continued. This in turn caused many stranded travelers to incur additional expenses, including for food, lodging, or alternative travel arrangements, as well as forfeiting, *inter alia,* deposits, tickets, and charges for activities held at the destinations never reached. Plaintiffs and class members also expended considerable time on hold and on websites attempting to secure alternate travel plans, securing meals and lodging where they were stranded, and seeking refunds.

The Related Actions are both putative class actions filed in response to the CrowdStrike Outage. The *del Rio* Action was filed first on August 5, 2024. The *Harlan* Action was filed two weeks later, on August 19, 2024. Both actions are pending in the Western District of Texas, and both name CrowdStrike, Inc. as a defendant. Each Related Action seeks the same or similar damages and relief and asserts largely similar counts on behalf of the plaintiffs and one or more putative classes of individuals affected by the CrowdStrike Outage. Both of the Related Actions are in their infancy, and no responsive pleading or dispositive motion has been filed in either of the Related Actions.

## III. Argument

### A. Consolidation is Appropriate

#### 1. Legal Standard

FRCP 42(a) empowers the Court to consolidate actions if the "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a); *Johnson v. El Centro Del Barrio*, No. 5:23-CV-1200-JKP, 2023 U.S. Dist. LEXIS 237958, at *2 (W.D. Tex. Dec. 1, 2023). In addition to the threshold issue of whether the cases involve common questions of law or fact, courts also consider:

(1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*RTIC Drinkware, LLC v. YETI Coolers, LLC*, No. 1:16-cv-907-RP, 2017 U.S. Dist. LEXIS 222938, at *5 (W.D. Tex. Jan. 18, 2017) (citations omitted).

Consolidation allows district courts to "manage their dockets efficiently while providing justice to the parties." *Wilson v. Johns-Manville Sales Corp.*, 107 F.R.D. 250, 252 (S.D. Tex. 1985). "District courts enjoy broad discretion in deciding whether consolidation is appropriate." *Teroganesian v. Sw. Airlines Co.*, No. 4:23-CV-00115, 2023 U.S. Dist. LEXIS 122196, at *3 (S.D. Tex. July 15, 2023) (citing *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761–62 (5th Cir. 1989)); *see also Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 432 (5th Cir. 2013) ("The trial court's managerial power is especially strong and flexible in matters of consolidation." (citations omitted)). Where, as here, "multiple actions are 'proceeding simultaneously' and in fact 'name the same defendants and involve common questions of fact and law' so as to be 'virtually identical,' consolidation 'is a proverbial no-brainer.'" *Teroganesian*, 2023 U.S. Dist. LEXIS 122196, at *3–4 (quoting *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F.Supp.3d 712, 716 (S.D. Tex. 2021)).

    2.    **The Related Actions Satisfy All of the Requirements for Consolidation**

    a.    **The Related Actions Share Common Questions of Law and Fact**

The Related Actions unquestionably share common questions of law and fact. The Related Actions are of the same nature in that each seeks certification of one or more classes of persons whose airline travel was affected by the CrowdStrike Outage; alleges that class members suffered harm as a result of the CrowdStrike Outage because, *inter alia*, they experienced delay or incurred

additional expenses when traveling; lost deposits and purchases at destinations never reached; and seeks damages and equitable relief.

The *del Rio* Action seeks to represent a nationwide class and three state subclasses of individuals who had a flight canceled or delayed as a result of the CrowdStrike Outage. *See del Rio*, No. 1:24-cv-00881-RP, ECF No. 1, ¶¶ 67–68. The *Harlan* Action seeks to represent a nationwide class and a single state subclass composed of customers of Delta Airlines affected by the CrowdStrike Outage. *See Harlan*, No. 1:24-cv-00954-RP, ECF No. 1, ¶¶ 59–60. These proposed class definitions overlap and minor class definition differences do not make consolidation inappropriate. *See, e.g.*, *A+ Auto Serv., LLC v. Republic Servs.*, No. 2:21-cv-1492-RMG, 2022 U.S. Dist. LEXIS 128671, at *6 (D.S.C. July 18, 2022) (consolidating actions with overlapping but different class definitions); *Boynes v. Limetree Bay Ventures, LLC*, No. 2021-0253, 2024 U.S. Dist. LEXIS 36163, at *19 n.14 (D.V.I. Mar. 1, 2024) (finding consolidation was appropriate where the actions had "significantly overlapping putative classes").

The Related Actions both arise out of the same incident: the CrowdStrike Outage that affected airlines' computer systems. Both Related Actions name CrowdStrike, Inc. as a common defendant.[2] Additionally, the Related Actions raise common theories of recovery, as each action brings similar claims for relief (including claims based on theories of negligence), alleges CrowdStrike violated its duties to adequately design and test the flawed update, and alleges CrowdStrike owes damages to those whose airline travel was affected by the CrowdStrike Outage.

---

[2] The *Harlan* Action additionally names CrowdStrike Holdings, Inc., CrowdStrike, Inc.'s parent company, as a defendant. *See generally Harlan*, No. 1:24-cv-00954-RP, ECF No. 1. "The fact that a defendant is named in one but not both of the actions does not, standing alone, make consolidation inappropriate." *Zolezzi v. Celadon Trucking Servs.*, No. H-08-3508, 2009 U.S. Dist. LEXIS 21226, at *4 (S.D. Tex. Mar. 16, 2009) (citing *Lewis v. Jones*, 154 F.3d 417 (5th Cir. 1998)).

Since the Related Actions raise similar questions of law and fact, consolidation is appropriate. *See, e.g.*, *Bayati v. GWG Holdings, Inc.*, No. 3:22-CV-0410-B, 2023 U.S. Dist. LEXIS 161080, at *7–8 (N.D. Tex. Sept. 12, 2023) (consolidating cases that made "nearly identical legal claims based on the same set of facts"); *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 U.S. Dist. LEXIS 15593, at *5–6 (W.D. Tex. Jan. 25, 2024) (consolidating class actions based on the same underlying event and brought on behalf of similar classes).

Consolidating the Related Actions will serve the goals of judicial efficiency and avoiding inconsistent verdicts by eliminating duplicative and overlapping litigation. *Lockhart*, 2024 U.S. Dist. LEXIS 15593, at *6 ("Consolidation will ensure consistent rulings and promote judicial economy."). For example, to prepare for each trial, the parties will engage in nearly identical discovery, depose the same witnesses, and gather the same evidence to prove their shared claims. Upon consolidation, the Court will be able to address the factual and legal issues raised in the Related Actions in one proceeding, streamlining the resolution of each case and avoiding inconsistency. *See Troupe v. Barbour*, No. 3:10-CV-153-HTW-MTP, 2016 U.S. Dist. LEXIS 189218, at *9–10 (S.D. Miss. Dec. 6, 2016) (consolidating cases to avoid inconsistent rulings and to "save the parties' resources insofar as they can work jointly on briefing dispositive issues and avoid duplication of discovery efforts").

### b. All Other Relevant Factors Support Consolidation

All of the other factors courts consider similarly favor consolidation. Both Related Actions are pending in the same court, which supports consolidation. *Id.* at *6; *Tex. Gen. Land Off. v. Biden*, No. 7:21-cv-00272, 2021 U.S. Dist. LEXIS 228735, at *8 (S.D. Tex. Nov. 29, 2021) (finding fact that cases were filed in the same district court and pending before the same judge weighed in favor of consolidation). The Related Actions each name CrowdStrike, Inc. as a common defendant. *See Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-cv-1321, 2023 U.S. Dist.

LEXIS 37025, at *6 (S.D. Tex. Feb. 2, 2023) (finding pending actions involving the same defendant favors consolidation); *Tex. Gen. Land Off.*, 2021 U.S. Dist. LEXIS 228735, at *8 (consolidating cases where one case named additional defendants not named in the other cases because "the named Defendants in both cases are functionally identical").

There is no risk of prejudice to any party as the Related Actions are both in their procedural inception. Defendants have not yet filed a response in either of the Related Actions, and discovery has not yet begun in either of the Related Actions. At this early stage of the proceedings, consolidation is unlikely to cause prejudice to any party. *See Tex. Gen. Land Off.*, 2021 U.S. Dist. LEXIS 228735, at *11 (rejecting argument that consolidation would prejudice parties because cases "are in their initial stages, neither has proceeded to discovery, and both cases are presently concerned with preliminary issues"); *Troupe*, 2016 U.S. Dist. LEXIS 189218, at *8 (consolidating cases where discovery had not begun in either case); *Schweitzer v. Inv. Comm. of the Phillips 66 Sav. Plan*, No. 4:17-CV-03013, 2018 U.S. Dist. LEXIS 1431, at *4 (S.D. Tex. Jan. 3, 2018) (consolidation appropriate where the litigation was "at the same stage" in both actions). Further, the similarity between the two Related Actions reduces the risk of prejudice. *Cf. Pfeffer v. HSA Retail, Inc.*, No. SA-11-CV-959-XR, 2012 U.S. Dist. LEXIS 14698, at *4 (W.D. Tex. Feb. 6, 2012) (denying consolidation of cases involving different defendants and factual scenarios because of potential prejudice to defendants).

As the Related Actions share numerous common questions of law and fact, there is a clear risk of inconsistent rulings should they proceed separately, which also favors consolidation. *See Bertrand v. Coastal Chem. Co. LLC*, No. 6:21-CV-04398, 2024 U.S. Dist. LEXIS 54151, at *7 (W.D. La. Mar. 19, 2024) ("Were consolidation denied, the undersigned agrees that a risk of inconsistent verdicts is inherent, as two separate juries would consider shared questions of fact

underlying both suits' claims."). Additionally, consolidating the Related Actions will reduce the time and cost of trying the cases, especially as both cases are in their procedural infancy. *Bayati*, 2023 U.S. Dist. LEXIS 161080, at *8 ("Consolidation of these actions, which are both in their early stages, would therefore promote judicial efficiency."). As all of these factors weigh in favor of consolidation, the Court should consolidate the Related Actions.

### B.    Appointment of Interim Class Counsel is Warranted

#### 1.    Legal Standard

FRCP 23(g)(3) provides "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." FRCP 23(g) lists four factors courts should consider when selecting interim class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the class action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *Phillips v. Bay Bridge Adm'rs, LLC*, No. 1:23-CV-022-LY, 2023 U.S. Dist. LEXIS 80168, at *3 (W.D. Tex. Apr. 24, 2023). Courts also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Phillips*, 2023 U.S. Dist. LEXIS 80168, at *3 (quoting Fed. R. Civ. P. 23(g)(1)(B)). The Manual for Complex Litigation states a court should "conduct an independent review . . . to ensure that counsel appointed to lead roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable." *Manual for Complex Litigation*, § 10.22 (4th ed. 2004). The most important factor is whether the appointment will help "achiev[e] efficiency and economy without jeopardizing fairness to the parties." *Id.* § 10.221.

Proposed Interim Co-Lead Class Counsel satisfy all the requirements for appointment by the Court under FRCP 23(g). They have the case management and complex litigation skills, experience, knowledge of the relevant facts and legal issues, and extensive resources needed to efficiently prosecute this action on behalf of putative class members. They are "the applicant[s] best able to represent the interests of the class." FRCP 23(g)(2).

> ### 2.    Proposed Interim Co-Lead Class Counsel Have Performed Substantial Work in Investigating and Advancing this Litigation

Proposed Interim Co-Lead Class Counsel have committed appropriate time and resources to organizing and working together toward the advancement of the litigation. Their efforts include investigating the factual underpinnings of the CrowdStrike Outage and this litigation, researching and analyzing applicable legal theories and causes of action, reviewing consumer communications concerning the CrowdStrike Outage, engaging in ongoing communications with putative class members, investigating the scope and consequences of the CrowdStrike Outage, reviewing and analyzing CrowdStrike's public statements regarding the CrowdStrike Outage and its consequences, and using this research and experience to prepare detailed class action complaints. *See* Declaration of Ben Barnow, attached hereto as Exhibit 1 ("Barnow Decl."), ¶¶ 8–9; Declaration of Rob Shelquist, attached hereto as Exhibit 2 ("Shelquist Decl."), ¶¶ 8–9.

Proposed Interim Co-Lead Class Counsel and their firms are familiar with the facts and legal issues in this matter and are well-equipped to efficiently pursue the relevant claims on behalf of Plaintiffs and the putative class. They are willing and able to continue to devote the substantial effort and resources (including the advancement of costs) necessary to advance the claims of Plaintiffs and the proposed class. *See* Barnow Decl. ¶ 10; Shelquist Decl. ¶ 10.

> ### 3.    Proposed Interim Co-Lead Class Counsel Are Highly Experienced and Have Extensive Knowledge of the Applicable Law

Ben Barnow and Rob Shelquist have extensive experience litigating consumer class actions and have gained superior knowledge of the law in this area. *See* Barnow Decl., Exhibit A; Shelquist Decl., Exhibit A. Proposed Interim Co-Lead Class Counsel have extensive experience litigating consumer class actions and have led numerous high-profile cases affecting millions of consumers, including highly publicized and historic cases in which courts have recognized their exceptional work. They have heavily litigated, conducted significant discovery, and briefed essentially every aspect of complex consumer class cases. Their individual qualifications are summarized below.

### a.    Ben Barnow

Ben Barnow is nationally recognized for his experience in leading some of the nation's largest consumer class actions and has been recognized as a "Titan of the Plaintiffs Bar."[3] Throughout his career, he has successfully organized, litigated, and resolved many complex class actions, attaining benefits valued in excess of five billion dollars for class members. *E.g.*, *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171 (C.D. Cal.) (Ben Barnow served as Co-Lead Counsel in this case regarding excessive frame rust on certain Toyota vehicles and guided the case to a landmark settlement providing benefits estimated at $3.4 billion); *Gann v. Nissan N. Am., Inc.*, No. 3:18-cv-00966 (M.D. Tenn.) (As one of Class Counsel in this case regarding defective transmissions on 1.4 million Nissan vehicles, Ben Barnow negotiated a settlement providing benefits valued at over $444 million).

Ben Barnow has extensive experience litigating high tech consumer class actions. He obtained the first class certification against Microsoft in the civil anti-trust litigation, *see A & M*

---

[3] *See* Sindhu Sundar, *Titan of the Plaintiffs Bar: Ben Barnow*, Law360 (Oct. 8, 2014), https://www.law360.com/articles/585655/titan-of-the-plaintiffs-bar-ben-barnow.

*Supply Co. v. Microsoft Corp.*, No. 00-0031123-NZ (Mich. Cir. Ct.), and he went on to litigate four statewide cases to settlement. *See In re S.D. Microsoft Antitrust Litig.*, No. 00-235 (S.D. Cir. Ct.); *Spence v. Microsoft Corp.*, No. 00-CV-003042 (Wis. Cir. Ct.); *Bellinder v. Microsoft Corp.*, No. 99 CV 17089 cons. (Kan. Dist. Ct.); *Peek v. Microsoft Corp.*, No. CV-06-2612 (Ark. Cir. Ct.). Ben Barnow was appointed to the Plaintiffs' Executive Committee (Co-Chair Settlement Committee) in *In re Apple Device Performance Litigation*, No. 18-md-02827-EJD (N.D. Cal.), which concerned Apple's alleged intentional degradation of the performance of certain iPhones; a settlement was reached providing at least $310 million for the class. He was Co-Lead Counsel in, and the architect of, one of the earliest major data breach settlements, *In Re TJX Companies Retail Security Breach Litigation*, No. 07-10162 (D. Mass.) (Young, J.), which made valuable benefits available to a class of approximately 45,000,000 persons. That settlement, which the Honorable Judge Young described as "excellent," and as containing "innovative" and "groundbreaking" elements, has often been referred to as the "Gold Standard" for data breach settlements. He has continued to lead data breach class actions to excellent results. *E.g.*, *Holden. v. Guardian Analytics*, No. 2:23-cv-02115-WJM-LDW (D.N.J.) (Ben Barnow was one of class counsel and instrumental in creating a settlement fund of $1,430,207.50 for a class of approximately 191,563 victims of a data breach); *Cochran v. Kroger Co.*, No. 5:21-cv-01887-EJD (N.D. Cal.) (As co-lead settlement class counsel, he took a leading role in crafting a settlement with one defendant that created a $5,000,000 non-reversionary common fund for approximately 3.8 million class members and gave only a partial release, reserving rights against the hub defendant); *Lukens v. Utah Imaging Assoc., Inc.*, No. 210906618 (Salt Lake Cnty., Utah) (As one of settlement class counsel, he established a $2,100,000 settlement fund for approximately 583,642 class members.); *In re Afni, Inc. Data*

*Breach Litig.*, No. 1:22-cv-01287 (C.D. Ill.) (As settlement class counsel, he helped negotiate a settlement that created a fund of $1,850,000 for approximately 261,449 class members).

Ben Barnow and Barnow and Associates, P.C. have been instrumental in the advancement of the interests of consumers at the appellate level. As a lead counsel in *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625 (3d Cir. 2017) and *Galaria v. Nationwide Mutual Insurance Co.*, 663 F. App'x 384 (6th Cir. 2016), he successfully achieved reversals from the Third Circuit and Sixth Circuit, respectively, recognizing the plaintiffs' Article III standing to assert data breach claims. And in *In re Zappos.com Inc. Customer Data Security Breach Litigation*, No. 12-cv-00325 (D. Nev.), he and co-lead counsel reinstated plaintiffs' standing through a Ninth Circuit appeal and successfully defended against a petition for certiorari to reverse that result. See *In re Zappos.com*, 888 F.3d 1020, 1030 (9th Cir. 2018). These appellate cases have been cited as authority over 650 times.

Ben Barnow has achieved many settlements recognized as quality work by courts across the country. *See In Re: Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 08-md-1998 (W.D. Ky.) (Ben Barnow served as one of Co-Lead Settlement Class Counsel in this forty-case MDL relating to a data breach in which the Honorable Chief Judge Russell noted that "Co-Lead Settlement Counsel are nationally recognized in the field of class actions, particularly those involving security breaches," and stated that "the Court was impressed with Co-Lead Counsel and Countrywide counsels' knowledge and skill, as represented in the various motions and hearings that took place throughout this settlement process."); *In re: Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 11-md-2258 (S.D. Cal.) (Serving on the PSC in this MDL involving over 60 cases and approximately 50 million consumers, Ben Barnow negotiated a settlement and at the final fairness hearing the Honorable Judge Anthony J. Battaglia remarked, "Just in the final

analysis, the order, much like all the work by both sides throughout the case, has been impeccable, highly professional, and skilled."); *In re Zappos.com*, No. 12-cv-00325 (D. Nev.) (At the Final Fairness Hearing, Judge Robert C. Jones called the settlement a "very ably negotiated item" and stated, "I did not meet the case with a receptive position at the outset, but you have certainly achieved a very terrific result for those who participated in the settlement."). In these cases, and others, he has not only worked well with defense counsel, but also with the many other plaintiffs' counsel who also filed, including various co-lead counsel and plaintiffs' steering committee members. Ben Barnow's experience and knowledge are further demonstrated in the Barnow and Associates, P.C. firm resume, attached hereto as Exhibit A to the Barnow Declaration.

### b.   Rob Shelquist

Rob Shelquist has been actively involved in researching, briefing, and arguing complex legal issues such as motions to dismiss, *Daubert* motions, summary judgment motions, class certification motions, and trial practice motions and testimony for decades. He has a track record of working with co-counsel in MDL and consolidated proceedings in a variety of roles including lead counsel, Executive Committee member, Plaintiff Steering Committee member, Liaison Counsel, or as a member of a discovery or law team. Significantly, he has been one of the trial counsel in two national class actions tried to verdict.

Lockridge Grindal Nauen PLLP ("LGN"), where he is a partner, has been in existence for over 40 years and has the proven and continuing financial wherewithal to advance costs and pay assessments necessary to prosecute this action. LGN has members who have also served in leadership and supportive roles in MDL and consolidated litigation in federal and state courts.

Rob Shelquist's experience spans a number of product liability categories and a wide range of fact patterns concerning consumer protection. He has had leadership roles in litigation concerning medical devices, including *In Re Medtronic, Inc. Sprint Fidelis Leads Products*

*Liability Litigation*, MDL 08-1905 (D. Minn.) (Liaison Counsel); *In Re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1708 (D. Minn.) (Trial Team); and *In Re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1726 (D. Minn.) (Trial Team). These cases raised issues related to preemption, the FDA approval process, the sufficiency of clinical trial data, the timing and extrapolated analysis from Med Watch reporting forms, general and specific causation, and the damages models for those suffering bodily injury and those who suffered economic loss. The trial team work involved the mock jury process helping to shape claims presentation, discovery, and case themes.

Rob Shelquist also has experience in leadership roles in medical pharmaceutical litigation, including *In Re Aredia and Zometa Products Liability Litigation*, MDL 06-1760 (M.D. Tenn.) (Plaintiffs' Steering Committee); *In Re Baycol Products Litigation*, MDL No. 1431 (D. Minn.) (Discovery and Briefing Committees); and *In Re Meridia Products Liability Litigation*, MDL 1481 (N.D. Ohio) (Co-Chair Discovery Committee). Each of those cases centered on the FDA drug approval process including clinical trial design, clinical trial reporting, FDA committee meetings and analysis leading to approval, the Med Watch process (the types of side effects reported, the sufficiency of the investigation, company responses, and the timely reporting of the root cause analysis), as well as the consideration and timing of warnings, black box warnings, and withdrawal/recall. In one of the cases, he had primary responsibility for the FDA expert to review reports, to prepare the expert for depositions, and to defend the depositions.

Rob Shelquist also has extensive experience leading and prosecuting general product liability cases, such as *In re CertainTeed Corp. Roofing Shingle Products Liability Litigation*, MDL 1817 (E.D. Pa.) (Co-Lead Counsel), *In Re IKO Roofing Shingle Products Liability Litigation*, MDL No. 2104 (C.D. Ill.) (Co-Lead Counsel), *In Re Kitec Plumbing System Products*

*Liability Litigation*, MDL No. 2098 (N.D. Tex.) (Co-Lead Counsel), and *George v. Uponor Corp.,
et al.*, No. 12-249 (D. Minn.) (Co-Lead Counsel). Additionally, he appeared before this Court in
*Wright, et al. v. Owens Corning*, MDL No. 1567 (W.D. Pa) (Co-Lead Counsel). Each of these
cases required substantial time and expense commitments related to briefing dispositive motions,
retaining experts in support of liability and damages, and briefing class certification motions. Rob
Shelquist also had responsibility in each of the cases to argue some of these key motions.

Rob Shelquist also has relevant experience in a number of cases seeking compensation for
persons injured by fraudulent practices related to herbicides, GMO traits, banking, food labeling,
and data tracking and commercial use. Most recently, he has been part of leadership committees
involving meat substitute products. Two of the leadership positions were in cases involving
certified multi-state or national classes tried to a jury verdict. In *Peterson v. BASF Corp.*, tried in
Minnesota state court, Rob Shelquist was second chair and class counsel to a 49-state class of
farmers which resulted in a verdict affirmed on appeal. *Peterson* involved primary jurisdiction,
preemption, federal and state regulatory schemes, and prosecuting claims under state consumer
fraud statutes. The second was an antitrust action where he was lead subclass counsel to an action
involving a product tried to verdict.

These cases evidence Rob Shelquist's and LGN's commitment to actively participating in
litigation and to fund the litigation support needed to prosecute actions through trial and appeal.
Mr. Shelquist is willing and able to devote the time and effort necessary to fulfill co-lead counsel
duties. Rob Shelquist's experience and knowledge are further demonstrated in the Lockridge
Grindal Nauen PLLP firm resume, attached hereto as Exhibit A to the Shelquist Declaration.

**4.    Proposed Interim Co-Lead Class Counsel Are Committed to Representing and Expending the Resources Necessary to Protect the Putative Class's Interests**

As to the fourth Rule 23(g)(1)(A) factor, Proposed Interim Co-Lead Class Counsel are willing and able to expend the resources necessary to ensure the vigorous prosecution of the claims asserted by the Plaintiffs in this litigation. *See* Barnow Decl. ¶ 10; Shelquist Decl. ¶ 10. Ben Barnow, Rob Shelquist, and their respective firms possess the resources, experience, and manpower required to vigorously prosecute this litigation to a successful resolution. They and their firms have already invested significant time and resources into the prosecution of these claims, including to investigating the CrowdStrike Outage and drafting detailed complaints. Proposed Interim Co-Lead Class Counsel are hard-working, organized, collaborative, and effective. They are committed to working cooperatively and efficiently on behalf of Plaintiffs and the proposed class(es) here, and will continue to do so in an effective and efficient manner. *See* Barnow Decl. ¶¶ 12–13; Shelquist Decl. ¶¶ 12–13.

**C.    The Appointment of Proposed Executive Committee Members to an Executive Committee is Warranted**

In serving the class and advancing the litigation, Proposed Interim Co-Lead Class Counsel will be assisted by a skilled and experienced executive committee, composed of Cory S. Fein of Cory Fein Law Firm, Warren T. Burns of Burns Charest LLP, Charles J. LaDuca of Cuneo Gilbert & LaDuca, LLP, and J. Barton Goplerud of Shindler, Anderson, Goplerud & Weese, P.C. As explained herein, each Proposed Executive Committee Member has the skills, knowledge, and experience to effectively aid in the prosecution of this litigation.

**1.    Cory Fein**

Cory Fein has extensive experience litigating consumer class actions and has been recognized for excellent work by multiple courts. Notable is his experience before Judge Robert

Pitman, the judge presiding over the present case. From 2014 through 2017, Cory Fein served as lead counsel in a vigorously contested class action pending before Judge Pitman and Magistrate Judge Bemporad. He successfully obtained class certification over the defendants' objections, and was appointed lead counsel. He litigated the case on behalf of the class to a final judgment in favor of the class, a rarity in class actions which seldom resolve with a merits-based judgment in favor of the class, against a solvent defendant represented by experienced defense counsel. Judge Pitman entered a $12.362 million judgment in favor of the certified Plaintiff class. *Sistrunk v. TitleMax, Inc.*, 5:14-cv-628-RP, ECF Nos. 302, 304. Mr. Fein obtained final approval of a post-judgment class action settlement. *Id.*, ECF No. 334. Notably, Magistrate Judge Bemporad rejected the defendants' challenge to Cory Fein as adequate counsel, finding that his refusal to accept an inadequate coupon settlement offer did not render him inadequate. *Id.*, ECF No. 213, at 25. Also notable is that Cory Fein successfully fought, over defendants' objection, for the right to send a supplemental notice to class members with Judge Pitman finding, "The Court is persuaded that supplemental notice will be beneficial. Should class counsel wish to distribute the supplemental notice they propose at their own effort and expense, they should be permitted to do so." *Id.*, ECF No. 324, at 2. Cory Fein's experience and knowledge are further demonstrated in his resume, attached hereto as Exhibit 3.

### 2. Warren T. Burns

Warren T. Burns is a founder and managing partner of Burns Charest LLP, a litigation boutique headquartered in Dallas, Texas, with offices in New Orleans, the District of Columbia, and New York. For nearly ten years in his present role, courts have appointed Warren T. Burns as lead or co-lead counsel or as a member of executive committees in cases affecting millions of Americans, including most recently *In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*, 17-md-2785-DDC-TJJ (D. Kan.) (co-lead counsel and lead trial

counsel); *In re: Blue Cross Blue Shield Antitrust Litigation*, 2:13-cv-20000-RDP, (N.D. Ala.) (lead counsel for ASO plaintiffs); and *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation*, 3:16-md-02738 (D.N.J.) (executive committee member).

Every year since 2014, Warren T. Burns has been named to the International Who's Who of Competition Lawyers. Since 2015, he has been included in the Top 100 National Trial Lawyers. Warren T. Burns has been named to the Lawdragon 500 Leading Plaintiff Financial Lawyers guide and the Lawdragon 500 Leading Plaintiff Consumer Lawyers guide for the past three years. In 2016, Mr. Burns was elected to the American Law Institute—the leading independent organization in the United States producing scholarly work to clarify, modernize, and improve the law. And in 2022, Mr. Burns received an award for Outstanding Achievement in Antitrust Litigation for Private Law Practice from the American Antitrust Institute. The honor recognized him and his firm for prevailing in a complex RICO and antitrust action alleging a series of anti-competitive practices by the makers of the EpiPen auto-injector device *In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*, 17-md-2785-DDC-TJJ (D. Kan.), ultimately reaching a $609 million class-wide settlement. Warren T. Burns's experience and knowledge are further demonstrated in his resume, attached hereto as Exhibit 4.

### 3.    Charles J. LaDuca

Charles J. LaDuca is the Firm Chairman of Cuneo Gilbert & LaDuca, LLP ("CGL"). He has worked for CGL for almost 30 years, and for approximately 25 years as an attorney litigating and prosecuting complex misrepresentation and harmful product class actions, defective products litigation, and consumer class actions generally.

CGL has devoted the majority of its practice to the representation of clients involved in consumer protection, products liability, antitrust, securities and corporate governance. Examples

of CGL's success are: (1) working to recover approximately two billion dollars for homeowners with defective construction materials; (2) helping to recover billions of dollars in shareholder litigation (notably, the firm served as Washington counsel for the plaintiffs in the *Enron Securities Litigation, In re Enron Corp. Sec. Litig*., No. H-01-3624 (S.D. Tex. 2006)); (3) obtaining settlements in *Automotive Parts Antitrust Litigation*, 12-md-02311 (E.D. Mich.), a case based on the largest antitrust conspiracy in history where CGL recovered more than $400 million; (4) obtaining compensation for Holocaust survivors in *Rosner, et al. v. United States*, No. 01-cv-1859 (S.D. Fla.), where the firm acted as Co-Lead Counsel in a case on behalf of survivors of the Holocaust in Hungary whose fortunes were misappropriated by the U.S. government in the final days of World War II; and (5) in several jurisdictions, ending the practice of jails subjecting minor law violators to unconstitutional strip searches. In 1991, with two California firms, the firm brought the so-called "Joe Camel" case, *Mangini v. RJ Reynolds Tobacco Co*., 7th Cal. 4th 1057 (1994), which alleged essentially that R. J. Reynolds Tobacco Company's Joe Camel Advertising Campaign illegally tricked children into smoking cigarettes. Charles J. LaDuca's experience and knowledge are further demonstrated in his resume, attached hereto as Exhibit 5.

### 4.    J. Barton Goplerud

J. Barton Goplerud is a shareholder with Shindler, Anderson, Goplerud & Weese, P.C. ("Shindler Anderson"). He has practiced law since 1990 and been involved in complex and class action litigation since 2003. Since 2003, his class action experience has been nationwide, as well as Iowa-focused. It has included a focus on wage and hour violations under FLSA along with antitrust, securities violations, financial products, product defect, consumer fraud and RICO cases.

J. Barton Goplerud has been appointed Lead Counsel in wage and hour class action litigation in the U.S. District Court for the Southern District of Iowa. In *Jones, et al. v. Casey's General Stores, Inc.*, No. 4:07-cv-00400 (S.D. IA.) and *Wineland, et al. v. Casey's General Stores,*

*Inc.* No. 4:08-cv-00020 (S.D. IA), he and co-lead counsel obtained the largest wage and hour settlement in the history of the state of Iowa. In addition, he has been appointed Local Counsel, Co-Counsel, or Co-Lead Counsel in other class action matters in the Northern and Southern Districts of Iowa, including *Hanson v. Berthel Fisher and Company Financial Services, Inc.*, No. 1:13-cv-00067 (N.D. Iowa), where he was appointed Co-Lead Counsel against a securities broker-dealer who fraudulently established a real estate investment program and Ponzi-like scheme.

Nationally, J. Barton Goplerud has been appointed to leadership positions in several matters. In *Fastrich, et al. v. Continental General Insurance Company et al.*, No 1:17-cv-00615 (S.D. Ohio), he was appointed Co-Lead Counsel in a class action lawsuit involving a large insurance company that for decades had defrauded its agents out of a substantial amount of commissions. He represented a class of insurance agents, spanning over fifteen years, and obtained financial relief for these class members. J. Barton Goplerud's experience and knowledge are further demonstrated in his resume, attached hereto as Exhibit 6.

## IV. Conclusion

For the foregoing reasons, Plaintiffs Julio del Rio, Jack Murphy, Steven Bixby, Christopher Harlan, and Sara Harlan respectfully request that the Court grant their motion and (i) consolidate the Related Actions; (ii) appoint Ben Barnow of Barnow and Associates, P.C. and Rob Shelquist of Lockridge Grindal Nauen PLLP as Interim Co-Lead Class Counsel; and (iii) appoint Cory S. Fein of Cory Fein Law Firm, Warren T. Burns of Burns Charest LLP, Charles J. LaDuca of Cuneo Gilbert & LaDuca, LLP, and J. Barton Goplerud of Shindler, Anderson, Goplerud & Weese, P.C. A proposed order granting this relief is submitted herewith.

Dated: September 19, 2024

Respectfully submitted,

/s/ Cory S. Fein
Cory S. Fein
**CORY FEIN LAW FIRM**
712 Main Street, Suite 800
Houston, TX 77002
Tel.: 713-730-5001
Fax: 530-748-0601
cory@coryfeinlaw.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Counsel for Plaintiffs Julio del Rio, Jack Murphy, and Steven Bixby.*

Robert K. Shelquist*
Rebecca A. Peterson**
Craig S. Davis*
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota 55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com
rapeterson@locklaw.com
csdavis@locklaw.com

Warren T. Burns
Kyle Oxford
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, Texas 75202
Telephone: (469) 904-4550
wburns@burnscharest.com
koxford@burnscharest.com

Korey A. Nelson*
**BURNS CHAREST LLP**
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Telephone: (504) 799-2845
knelson@burnscharest.com

Charles J. LaDuca*
Brendan Thompson*
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue NW
Washington, D.C. 20016
Telephone: (202) 789-3960
charlesl@cuneolaw.com
brendan@cuneolaw.com

J. Barton Goplerud*
Brian O. Marty*
**SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
goplerud@sagwlaw.com
marty@sagwlaw.com

*Counsel for Plaintiffs Christopher Harlan and Sara Harlan.*

*Admitted *pro hac vice*
** *Pro hac vice* forthcoming

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Plaintiffs conferred with Defendants regarding their position on this Motion on September 19, 2024. Defendants stated that they do not take a position on this Motion and intend to contest personal jurisdiction and/or venue.

/s/ <i>Anthony L. Parkhill</i>
Anthony L. Parkhill

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2024, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court via the Court's CM/ECF system for electronic service on all counsel of record.

/s/ Cory S. Fein
Cory S. Fein
