UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JULIO DEL RIO, JACK MURPHY, STEVEN BIXBY, ALICIA KIRBY, PHILIP KIRBY, JENNIE AGUAYO, CHRISTOPHER HARLAN, and SARA HARLAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CROWDSTRIKE, INC. and CROWDSTRIKE HOLDINGS, INC., <br><br> Defendants. | Case No. 1:24-cv-00881-RP <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

## DEFENDANTS CROWDSTRIKE, INC.'S AND CROWDSTRIKE HOLDINGS, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 2

      A.    Plaintiffs' Claims Are Preempted Under the Airline Deregulation Act. ............... 2

            1.    Plaintiffs' Claims Relate to Airline Services. .............................................. 2

            2.    Plaintiffs' Claims Would Have a Forbidden Significant Effect. ................ 5

            3.    Plaintiffs' Personal Injury Claims Fall Within the Scope of ADA
                  Preemption. ..................................................................................................... 7

            4.    Plaintiffs Have Remedies for Their Flight Disruptions. ........................... 8

      B.    The Common-Law Claims Do Not Satisfy the Federal Pleading Standards
            Because Plaintiffs Do Not Allege Which State Law Applies. .............................. 8

      C.    The Court Should Strike Plaintiffs' Class Allegations. ......................................... 9

      D.    Plaintiffs' Negligence Claims Fail. ...................................................................... 11

            1.    No Duty for Economic Losses, Regardless of Foreseeability or
                  Control. ......................................................................................................... 11

            2.    Plaintiffs Allege Economic Losses. ......................................................... 12

      E.    Plaintiffs' Allegations Do Not Establish Public Nuisance. ................................ 13

III.  CONCLUSION ................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C.L. Computs. & Software, Inc. v. Fed. Express Corp.*,
    2016 WL 946127 (N.D. Cal. Mar. 14, 2016)...........................................................................6

*Alcoa, Inc. v. Behringer*,
    235 S.W.3d 456 (Tex. Ct. App. 2007) ..................................................................................11

*Bajra, et al. v. Delta Air Lines, Inc.*,
    No. 1:24-cv-03477-MHC (N.D. Ga. May 6, 2025), Dkt. 60 ....................................................2

*CapLOC LLC v. Liberty Mut. Ins. Eur.*,
    2021 WL 2551591 (N.D. Tex. June 22, 2021) .......................................................................9

*Chang v. City of Milton*,
    2023 Ga. State LEXIS 3683 (Ga. St. Ct. Sept. 21, 2023) .......................................................14

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
    445 S.W.3d 716 (Tex. 2014) .................................................................................................11

*Cincinnati v. Beretta U.S.A. Corp.*,
    768 N.E.2d 1136 (Ohio 2002)...............................................................................................14

*Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*,
    29 S.W.3d 282 (Tex. Ct. App. 2000) ....................................................................................11

*Collins v. Pecos & N.T. Ry.*,
    212 S.W. 477 (Tex Comm'n App. 1919)...............................................................................11

*Commonwealth v. VonBestecki*,
    30 Pa. D. & C. 137 (C.P. 1937) ...........................................................................................13

*Delta Air Lines, Inc. v. Black*,
    116 S.W.3d 745 (Tex. 2003)..................................................................................................8

*DFND Sec., Inc. v. CrowdStrike, Inc.*,
    2025 WL 808078 (N.D. Cal. Mar. 13, 2025).........................................................................10

*Doe v. Apostolic Assembly of Faith in Christ Jesus*,
    452 F. Supp. 3d 503 (W.D. Tex. 2020)..................................................................................10

*Energy Coal S.P.A. v. Citgo Petroleum Corp.*,
    836 F.3d 457 (5th Cir. 2016) ..................................................................................................9

*Enter. Prods. Ptnrs., L.P. v. Mitchell*,
    340 S.W.3d 476 (Tx. Ct. App. 2011) ................................................................. 10

*Fox v. Iowa Health Sys.*,
    399 F. Supp. 3d 780 (W.D. Wis. 2019) ............................................................... 13

*Ganpat v. E. Pac. Shipping PTE, Ltd.*,
    2022 WL 219054 (E.D. La. Jan. 25, 2022) ........................................................... 9

*Gardiner v. Walmart Inc.*,
    2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ....................................................... 12

*Gen. Elec. Co. v. M&M X-Press Serv., Ltd.*,
    2008 WL 4747211 (S.D. Tex. Oct. 27, 2008) ..................................................... 12

*Gordon v. Amadeus IT Grp., S.A.*,
    194 F. Supp. 3d 236 (S.D.N.Y. 2016) .................................................................. 3

*Graham Oil Co. v. BP Oil Co.*,
    885 F. Supp. 716 (W.D. Pa. 1994) ..................................................................... 14

*Heritagemark, LLC v. Unum Life Ins. Co. of Am.*,
    2023 WL 11052488 (S.D. Tex. Oct. 2, 2023) ....................................................... 9

*Hodges v. Delta Airlines, Inc.*,
    44 F.3d 334 (5th Cir. 1995) ............................................................................. 5, 7

*Hou-Tex v. Landmark Graphics*,
    26 S.W.3d 103 (Tex. App. 2000) ....................................................................... 11

*In re Am. Airlines, Inc., Priv. Litig.*,
    370 F. Supp. 2d 552 (N.D. Tex. 2005) ........................................................ 2, 4, 6

*In re Signal Int'l, LLC*,
    579 F.3d 478 (5th Cir. 2009) ............................................................................. 11

*Jamail v. Stoneledge Condo. Owners Ass'n*,
    970 S.W.2d 673 (Tex. Ct. App. 1998) ............................................................... 13

*Kjellander v. Smith*,
    652 S.W.2d 595 (Tex. Ct. App. 1983) ............................................................... 13

*Kuehl v. Sellner*,
    965 N.W.2d 926 (Iowa Ct. App. 2021) .............................................................. 14

*Lee Lewis Const., Inc. v. Harrison*,
    70 S.W.3d 778 (Tex. 2001) ............................................................................... 11

*Lee v. Samsung Elecs. Am., Inc.*,
   2022 WL 4663878 (S.D. Tex. Sept. 21, 2022) ....................................................................10

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
   283 F.3d 282 (5th Cir. 2002) .............................................................................................7

*Malik v. Cont'l Airlines*,
   305 F. App'x. 165 (5th Cir. 2008) ...........................................................................5, 6, 7, 8

*Malik v. Cont'l Airlines, Inc.*,
   2008 WL 11504972 (W.D. Tex. Jan. 29, 2008) ..................................................................5

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)....................................................................................................2, 3, 5

*Onoh v. Nw. Airlines, Inc.*,
   613 F.3d 596 (5th Cir. 2010) .............................................................................................7

*Osuna v. S. Pac. R.R.*,
   641 S.W.2d 229 (Tex. 1982)..............................................................................................11

*Otis Eng'g Corp. v. Clark*,
   668 S.W.2d 307 (Tex. 1983).............................................................................................11

*Perez v. ZTE (USA), Inc.*,
   2020 WL 3798865 (N.D. Tex. July 6, 2020) .....................................................................10

*Pica v. Delta Air Lines, Inc.*,
   2019 WL 1598761 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591 (9th
   Cir. 2020) ...................................................................................................................2, 3, 4

*Pottawattamie Cnty. v. Iowa Dep't of Env't Quality*,
   272 N.W.2d 448 (Iowa 1978) ...........................................................................................14

*Randall's Food Markets, Inc. v. Johnson*,
   891 S.W.2d 640 (Tex. 1995)..............................................................................................12

*Reedy v. Phillips 66 Co.*,
   2018 WL 1413087 (S.D. Tex. Mar. 20, 2018)....................................................................10

*Samuel v. Signal Int'l L.L.C.*,
   2014 WL 12597397 (E.D. Tex. Feb. 18, 2014) ...................................................................9

*Shakeri v. ADT Sec. Servs., Inc.*,
   816 F.3d 283 (5th Cir. 2016) ............................................................................................11

*Sisco v. Iowa-Ill. Gas & Elec. Co.*,
   368 N.W.2d 853 (1985) ...............................................................................................13, 14

iv

*State v. Kaster*,
  35 Iowa 221 (Iowa 1872) ................................................................................13

*Sulak v. Am. Eurocopter Corp.*,
  901 F. Supp. 2d 834 (N.D. Tex. 2012) ...........................................................10

*Teunissen v. Orkin Exterminating Co.*,
  484 N.W.2d 589 (Iowa 1992) ..........................................................................13

*Town of Ackley v. Cent. States Elec. Co.*,
  214 N.W. 879 (Iowa 1927) ..............................................................................14

*Trans-Gulf Corp. v. Performance Aircraft Servs. Inc.*,
  82 S.W.3d 691 (Tex. Ct. App. 2002) ..........................................................11, 12

*Witty v. Delta Air Lines, Inc.*,
  366 F.3d 380 (5th Cir. 2004) .............................................................................7

*Wray v. Home Depot U.S.A., Inc.*,
  2021 WL 1238298 (N.D. Tex. Apr. 2, 2021) ..................................................12

*Zuniga v. Reynolds*,
  2024 WL 3461973 (W.D. Tex. July 18, 2024) ..................................................9

**Statutes**

49 U.S.C. § 42305 ........................................................................................................8

FAA Reauthorization Act of 2024, PL 118-63 ...........................................................8

**Other Authorities**

14 C.F.R. §259.5 .........................................................................................................8

14 C.F.R. § 260.6 ........................................................................................................8

Fed. R. Civ. P. 8(a)(2) .................................................................................................8

Merriam-Webster.com, https://www.merriam-webster.com/dictionary/antisocial
  (accessed Apr. 9, 2025) ...................................................................................14

Transportation Service Administration,
  https://www.tsa.gov/news/press/releases/2023/03/07/tsa-issues-new-
  cybersecurity-requirements-for-airport-and-aircraft (March 7, 2023) ......................6

# I.     INTRODUCTION[1]

The claims in this lawsuit relate to airline services and are preempted under the Airline Deregulation Act ("ADA").  The core allegations of Plaintiffs' Complaint unequivocally relate to airline services.  For example, Plaintiffs allege that "CrowdStrike's airline customers and their passengers, including Plaintiffs and other Class members, relied on CrowdStrike's performance of its ongoing services to keep CrowdStrike's airline customers' airplanes flying as scheduled …." Compl. ¶ 209.  Now, facing dismissal of their claims under the ADA, Plaintiffs attempt to reverse course and, contrary to the Complaint, argue that their claims do not relate to airline services at all.  Plaintiffs' about-face, however, relies solely on an argument that has been firmly rejected by the Supreme Court, the Fifth Circuit, and the district courts of Texas—*i.e.*, because CrowdStrike did not itself provide an airline service, the claims are not preempted.  Plaintiffs' argument simply ignores that under the well-established law, their claims are preempted if they "*relate to*" airline services.  Nothing more is required because the wide preemptive effect of the ADA was intended, as it does here, to eliminate the possibility for a patchwork of state-law claims that could be asserted against various defendants, and not just the airlines themselves, *relating to airline services*.  Courts have repeatedly held claims against airline vendors, like CrowdStrike, are preempted when the vendor provides services that *relate to* airline services.

It is clear that Plaintiffs' claims are preempted.  But the claims also fail and must be dismissed for four additional reasons:

<u>First</u>, contrary to Plaintiffs' cited authorities, Plaintiffs' failure to allege which state laws govern their common-law claims is a pleading deficiency requiring dismissal.

<u>Second</u>, Plaintiffs' proposed classes cannot be certified and should be stricken.  Plaintiffs'

---

[1] CrowdStrike respectfully requests the Court grant oral argument on this dismissal motion.

negligence claims cannot be certified under the laws of all fifty states and individual inquiries are required to assess which state's law applies to each Plaintiff.

Third, Plaintiffs' negligence claims fail under the economic loss rule, which precludes duty in tort, regardless of foreseeability or control by the defendant.

Fourth, Plaintiffs' attempt to stretch public-nuisance law fails. The necessary elements are not satisfied when Plaintiffs, at most, allege flight delays.

## II.    ARGUMENT

### A.    Plaintiffs' Claims Are Preempted Under the Airline Deregulation Act.

Plaintiffs' claims fall squarely within the ADA's broad preemption provision. Indeed, in the consumer class action against Delta Air Lines *arising from the CrowdStrike Outage*, the Northern District of Georgia just held the non-contractual claims were preempted under the ADA. *See Bajra, et al. v. Delta Air Lines, Inc.*, No. 1:24-cv-03477-MHC (N.D. Ga. May 6, 2025), Dkt. 60 ("*Bajra* Order") at 32–40.

The ADA preempts any claims "relating to"—meaning "having a connection with or reference to"—airline services. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992); *see also Bajra* Order at 37 (adopting broad definition of "services" under the ADA). It does not matter whether an airline vendor is itself providing airline services; claims are preempted when they involve a vendor's work that relates to airline services. *See In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 564–65 (N.D. Tex. 2005); *Pica v. Delta Air Lines, Inc.*, 2019 WL 1598761, at *9 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591 (9th Cir. 2020).

### 1.    Plaintiffs' Claims Relate to Airline Services.

It is clear that Plaintiffs' claims relate to airlines services. The Complaint alleges that the airlines with which Plaintiffs contracted "rely heavily on cyber and network support to operate the[ir] *essential systems*." Compl. ¶ 143 (emphasis added). But in their opposition, Plaintiffs now

argue CrowdStrike's "cybersecurity service is too attenuated from 'airline services,' such as ticketing, boarding procedures, the provision of food and drinks, baggage handling, or the transportation itself for Plaintiffs' claims to be preempted by the ADA." Opp. at 5. Setting aside that Plaintiffs' opposition position is contradicted by Plaintiffs' own Complaint, Plaintiffs are wrong. The Supreme Court has firmly held that the ADA's "related to" language should be read broadly and includes "actions having **a connection with, or reference to**, airline 'rates, routes, or services." *Morales*, 504 U.S. at 384 (emphasis added). Applying this Supreme Court standard, lower courts have repeatedly held that claims against airline vendors are preempted where the vendors' work "relates to" an airline service—even when the vendor is not directly providing an airline service as a common carrier.[2]

The *Pica* case aptly illustrates the breadth of the preemptive effect of the ADA when the claims relate to airline services provided by vendors that are not themselves common carriers. *Pica* involved Delta's website and mobile application, which "provide[d] online travel reservation, air transportation, and related services to customers," and Delta's technology vendor that supported "voice and chat services." 2019 WL 1598761 at *1. Following a cybersecurity incident affecting the vendor's systems, the plaintiffs sued, claiming "negligent handling" of the plaintiffs' personal information. *Id.* at *4. In response to a motion to dismiss the claims by the vendor under the ADA, the plaintiffs argued that the vendor's services were "not related to the service of an air carrier" because the vendor "offer[ed] a generic chat service that is used in the same way and manner by

---

[2] Without support, Plaintiffs repeat the argument that there is no ADA preemption because CrowdStrike is not solely an airline vendor. Opp. at 4, 5, 7. Plaintiffs are incorrect. *See Pica*, 2019 WL 1598761, at *9 ("Plaintiffs cite to no authority—nor can the Court locate any—suggesting that ADA preemption applies to agents of airlines only where those agents provided services exclusively to airlines. In fact, many other courts have concluded just the opposite."); *see also Gordon v. Amadeus IT Grp., S.A.*, 194 F. Supp. 3d 236, 246 (S.D.N.Y. 2016) (holding ADA preempted airline ticket purchasers' state law claims against non-airline technology providers).

many different types of companies that are not airlines." *Id.* at *9 (internal citations omitted).  The court rejected this argument and had "little trouble concluding," as a matter of law, that the claims against the vendor were preempted.  Because the vendor "provide[d] voice and chat services **related to** 'sales and support' for Delta," "[the vendor's] services relate[d] to Delta's 'rates, routes, or services.'" *Id.* (emphasis added).  Even though the vendor did not directly provide airline services to airline customers, because the vendor's services "related to" airline services, the claims were preempted.

Similarly, in *In re American Airlines*, airline customers brought state-law claims against (1) a vendor that helped maintain American Airline's website and (2), separately, private research companies to which the airline website vendor disclosed the plaintiffs' information.  370 F. Supp. 2d at 555.  The plaintiffs argued their claims had "no connection" to airline services because they "do not relate to American's rates, routes, or services." *Id.* at 562.  The court easily rejected the argument, as this Court should do here, because the claims were "based on conduct that *relates to* American's ticketing service and its reservation component." *Id.* at 564 (emphasis added).  The claims were clearly preempted even though the vendor helped maintain the website and the third-party research firms that received information were a further step removed from the provision of airline services. *Id.* at 564–65.

Here, Plaintiffs' claims are far more *related to* airline services.  The gravamen of the Complaint are claims arising from flight disruptions and cancellations resulting from the common carrier airlines being customers of CrowdStrike.  This is apparent from the Complaint itself that alleges "**CrowdStrike's airline customers and their passengers, including Plaintiffs and other Class members, relied on CrowdStrike's performance of its ongoing services to keep CrowdStrike's airline customers' airplanes flying as scheduled**, among other things." Compl.

¶ 209 (emphasis added). Plaintiffs also acknowledge the airlines "rely heavily on cyber and network support to operate the[ir] essential systems," and that the CrowdStrike Outage "affected many separate [airline] systems, such as those used for calculating aircraft weight, checking in customers, and phone systems in [airline] call centers," all of which are fundamental to the airlines' provision of services to their customers. *Id.* ¶¶ 143, 155. Under *Morales* and its progeny, Plaintiffs' claims clearly *relate to* airline services and are preempted under the ADA.

### 2.    Plaintiffs' Claims Would Have a Forbidden Significant Effect.

In an attempt to avoid the controlling precedent that their claims are preempted, Plaintiffs improperly argue that their claims must have "forbidden significant effects" to be preempted. Opp. at 3. This is not the test. In *Hodges*, the Fifth Circuit outlined the test for preemption, which is whether Plaintiffs' claims "relate to" airlines' "rates, routes, or services[.]" *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995). When they do, the claims necessarily and inherently have a "forbidden significant effect" contrary to the purpose of the ADA and are preempted. *Id.* Accordingly, Plaintiffs' argument that "Plaintiffs are not attempting to impose some separate economic duty on the airlines through state laws that would affect their services to customers" is irrelevant to preemption. Opp. at 6. There is no separate economic litmus test. The test is whether the claims relate to airline services. The Fifth Circuit's *Malik* decision underscores this approach: The Fifth Circuit held a single plaintiff's claims for one piece of lost luggage were preempted because they "ha[d] a connection with [the airline's] baggage handling services." *Malik v. Cont'l Airlines,* 305 F. App'x. 165, 168 (5th Cir. 2008).[3] The nominal economic effect of

---

[3] This Court came to the same conclusion in the underlying decision. *See Malik v. Cont'l Airlines, Inc.*, 2008 WL 11504972, at *3 (W.D. Tex. Jan. 29, 2008), *report and recommendation approved*, 2008 WL 11505689 (W.D. Tex. Mar. 11, 2008).

replacing one piece of luggage was irrelevant; the claim was preempted because it was related to airline services. *See id.*

Here, Plaintiffs are clearly impermissibly seeking to regulate airline computer systems through tort law. Plaintiffs' Complaint states unequivocally that the aim of this lawsuit is to "help[] to prevent future mass shutdowns of computer systems across the world" by asking the Court to impose a common-law standard of care. Opp. at 6; *see also* Compl. at 55 (requesting injunctive relief that CrowdStrike "adopt[] and implement[] best software development and testing practices to protect against future outages"). When litigation seeks to regulate the standards for how airlines operate, the claims are clearly preempted. *See, e.g.*, *A.C.L. Computs. & Software, Inc. v. Fed. Express Corp.*, 2016 WL 946127, at *2–3 (N.D. Cal. Mar. 14, 2016) (concluding that imposing negligence standard of care derived from state common-law would "require[] the airline to offer services significantly different than what the market might dictate"); *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d at 564 ("Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how they manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline.").

Allowing Plaintiffs' claims to proceed is also inconsistent with federal regulations governing how common carriers *must* operate their cybersecurity systems. *See, e.g.*, Transportation Security Administration, National Press Release (March 7, 2023)[4] (implementing requirements for airlines to proactively assess and develop an implementation plan that "improve[s] their cybersecurity resilience and prevent[s] disruption and degradation to their

---

[4] Transportation Service Administration, TSA issues new cybersecurity requirements for airport and aircraft operators, https://www.tsa.gov/news/press/releases/2023/03/07/tsa-issues-new-cybersecurity-requirements-for-airport-and-aircraft, (March 7, 2023).

infrastructure."); *see also Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 288 (5th Cir. 2002) ("The existence of federal regulations regarding airline [] services . . . provide[s] additional support for the conclusion that the ADA preempts Plaintiff's claims.").

### 3.    Plaintiffs' Personal Injury Claims Fall Within the Scope of ADA Preemption.

The ADA also preempts Plaintiffs del Rio, Murphy, and Aguayo's purported personal injury claims.  Opp. at 8, 9.  Although there is an exception to ADA preemption for personal injuries and property damages, it only applies if the personal injuries or property damages were "caused by the operation and maintenance of aircraft"—and not when, as here, the alleged harms arise from other airline services.  *See Hodges*, 44 F.3d at 336; *Malik*, 305 F. App'x at 169 (ADA preempted property damage claims because they related to airline personnel's mishandling of her bags, "not damage from the way in which the plane was flown"); *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 382–83 (5th Cir. 2004) (ADA preempted passenger personal injury claim arising from blood clot caused by insufficient leg room because requiring airlines to provide more leg room relates to airline prices, not the operation and maintenance of the aircraft).

Here, Plaintiffs' personal injury claims do not relate to the operation or maintenance of the aircraft; rather, Plaintiffs allege the injuries were the downstream consequences of not being able to get on a plane at all.  *See* Compl. ¶ 15 (Plaintiff del Rio: back and neck pain "as a result of" having to sleep on airport benches due to a flight delay), ¶ 24 (Plaintiff Murphy: interruption of "sleep schedule caused him to suffer a migraine"), ¶ 57 (Plaintiff Aguayo: "anxiety, chest pains, and headaches due to the stress caused by the CrowdStrike Outage impact on her travel")*; see also Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 600 (5th Cir. 2010) (denying plaintiff's claims for intentional infliction of emotional distress when the airline did not allow her to board the plane in Amsterdam due to missing visa documentation).  If these injuries had been caused during the operation of the aircraft, Plaintiffs' contentions "might have merit," but they were not even on

board an airplane when they suffered their alleged injuries.  *See Malik,* 305 F. App'x at 169. ("If Malik's bags had caught on fire during a plane crash, her contention might have merit.").

**4.      Plaintiffs Have Remedies for Their Flight Disruptions.**

Plaintiffs do not dispute that there is a pervasive federal regulatory scheme governing how airline customers must be compensated for flight disruptions and cancelations, *see* 49 U.S.C. § 42305; 14 C.F.R. § 260.6; 14 C.F.R. §259.5,[5] but say the regulatory scheme is "irrelevant" here because it does not apply to CrowdStrike, just the common carrier airlines.  Opp. at 7.  Plaintiffs miss the point.   The federal regulations apply *to Plaintiffs*, as airline passengers seeking compensation for flight delays and cancelations, and the very existence of these regulations underscores that Plaintiffs' claims are preempted.  *See, e.g.*, *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 756 (Tex. 2003) (finding "[t]he fact that federal regulations expressly address" an airline service "strengthens [the court's] conclusion" that the ADA preempts Plaintiff's state-law claims and noting "[t]o hold otherwise could create extensive multi-state litigation, launching inconsistent assaults on federal deregulation in the airline industry").

**B.      The Common-Law Claims Do Not Satisfy the Federal Pleading Standards Because Plaintiffs Do Not Allege Which State Law Applies.**

Because the Complaint does not allege the applicable state law, it fails to provide "a short and plain statement of the claim showing [Plaintiff] is entitled to relief."  *See* Mot. 10; Fed. R. Civ. P. 8(a)(2).  Plaintiffs assert they need not provide this information, but rely on cases that did not

---

[5] Congress also strengthened the regulatory remedy scheme in 2024 by creating a new Office of Aviation Consumer Protection headed by the Assistant Secretary for Aviation Consumer Protection, speeding up the refund process, and requiring airlines to implement new policies for reimbursing passengers for costs incurred due to flight delays.  *See* FAA Reauthorization Act of 2024, PL 118-63 at §§ 501, 503, 505.  At the same time, Congress codified numerous consumer protection provisions and dramatically increased the maximum civil penalty that can be imposed on an air carrier.  *Id. at* §§ 507-510.

address this issue. *See id.* at 9.[6]  The one case Plaintiffs cite that dealt with this question, *Samuel v. Signal Int'l L.L.C.*, involved a situation where—unlike here—the differences in state laws did not affect the case. *See* 2014 WL 12597397, at *3 (E.D. Tex. Feb. 18, 2014) (no "show[ing] there is even a conflict of laws between Texas and any other potentially applicable law").

Here, there are substantial, substantive differences in the state-law standards governing Plaintiffs' negligence and public nuisance claims. *See* Mot. 14–15; *infra* § E.  Without knowing which state's law applies, CrowdStrike is left to guess the elements of the claims it faces, contravening federal pleading standards. *See, e.g.*, *Heritagemark, LLC v. Unum Life Ins. Co. of Am.*, 2023 WL 11052488, at *2 (S.D. Tex. Oct. 2, 2023) ("Uncertainty over the applicable state law" is grounds for dismissal.).  Although Plaintiffs now contend—for the first time in their opposition—that Texas law applies to their negligence claims and the law of each putative class members' home state applies to their public nuisance claims, Opp. 14, "[i]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Zuniga v. Reynolds*, 2024 WL 3461973, at *2 (W.D. Tex. July 18, 2024).

## C.    The Court Should Strike Plaintiffs' Class Allegations.

Because the Court should apply the law of the state where Plaintiffs' alleged injuries occurred, Plaintiffs' putative classes cannot be certified and should be stricken for at least two reasons.  First, because Plaintiffs' alleged injuries occurred in different states across the country, the negligence claims will need to be asserted under the laws of all 50 states, which courts have

---

[6] *Ganpat v. E. Pac. Shipping PTE, Ltd.*, 2022 WL 219054, at *3 (E.D. La. Jan. 25, 2022) (addressing if court could "determine that the law of India applies" on motion to dismiss); *CapLOC LLC v. Liberty Mut. Ins. Eur.*, 2021 WL 2551591, at *5 (N.D. Tex. June 22, 2021) (addressing if New York choice-of-law clause in insurance policy governed breach of contract claim); *Energy Coal S.P.A. v. Citgo Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) (addressing which state law applies to determine subsidiary's liability).

repeatedly held is unworkable given the differences in state laws. Second, Plaintiffs assert their public nuisance claim on behalf of residents of only three states, but individualized determinations will be required to determine where injuries occurred.[7]

Plaintiffs argue otherwise, claiming Texas law applies to their negligence claims because CrowdStrike's "principal place of business is in Texas,"[8] and residency controls for public nuisance. Opp. at 14. But Plaintiffs ignore that under Texas's "most significant relationship test," courts have repeatedly held "the applicable law will usually be the local law of the states where the injury occurred." *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F. Supp. 3d 503, 537 (W.D. Tex. 2020) (citing Restatement § 145 cmt. d, e); *Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 846 (N.D. Tex. 2012) (same); *Perez v. ZTE (USA), Inc.*, 2020 WL 3798865, at *6 (N.D. Tex. July 6, 2020) (same). Plaintiffs do not address these authorities or explain why CrowdStrike being located in another state would overcome the "presumption in favor of applying the law of the place of the injury," which requires application of the laws of the state where each Plaintiff allegedly experienced delays or cancellations. Compl. ¶¶ 10–72, 162; *Enter. Prods. Ptnrs., L.P. v. Mitchell*, 340 S.W.3d 476, 481 (Tx. Ct. App. 2011) (citing Restatement § 145 cmt. d).[9]

---

[7] CrowdStrike's motion to strike their class allegations is not *per se* "premature." *See* Opp. at 10; *Lee v. Samsung Elecs. Am., Inc.*, 2022 WL 4663878, at *2, 7 (S.D. Tex. Sept. 21, 2022) (granting motion to strike where plaintiffs asserted fraudulent concealment and unjust enrichment claims on behalf of national class because "there are marked differences in the law" and the plaintiffs "failed to demonstrate that the common issues will predominate in the national class"); *see also Reedy v. Phillips 66 Co.*, 2018 WL 1413087, at *2 (S.D. Tex. Mar. 20, 2018) (similar).

[8] Plaintiffs incorrectly state that CrowdStrike's principal place of business is Texas. CrowdStrike's operating company CrowdStrike, Inc.'s principal place of business is Sunnyvale, California. CrowdStrike Holdings, Inc.'s principal executive office (designation required by SEC) is Austin, Texas, but is not CrowdStrike's principal place of business. *See DFND Sec., Inc. v. CrowdStrike, Inc.*, 2025 WL 808078, at *2 (N.D. Cal. Mar. 13, 2025) (CrowdStrike, Inc.'s principal place of business is Sunnyvale, California).

[9] Plaintiffs' proposed Rule 23(c)(4) class allegations should also be stricken. Mot. at 16 n.7. Because the Complaint cannot satisfy Rule 23(a) and (b), it cannot, as a matter of law, satisfy Rule 23(c)(4). *See id.* Plaintiffs do not attempt to dispute that this is the law. *See* Opp. at 12.

### D.    Plaintiffs' Negligence Claims Fail.

CrowdStrike does not owe an expansive duty for every conceivable downstream consequence of *its customers'* use of its services.  Under the economic loss rule, CrowdStrike does not owe Plaintiffs a duty to prevent economic injuries, even if, as Plaintiffs argue, (1) flight delays and cancellations were foreseeable or (2) CrowdStrike controlled the airlines' computer systems. Opp. at 15–17.

#### 1.    No Duty for Economic Losses, Regardless of Foreseeability or Control.

When a plaintiff only seeks economic damages, "the economic loss rule precludes any duty in tort" and "economic damages are not recoverable unless they are accompanied by actual physical harm to persons or their property." *Hou-Tex v. Landmark Graphics*, 26 S.W.3d 103, 107 (Tex. App. 2000).  "The economic loss rule is a rule of 'duty' which focuses on the nature of the loss claimed in order to determine the duty in tort owed[.]"  *Trans-Gulf Corp. v. Performance Aircraft Servs. Inc.*, 82 S.W.3d 691, 694 (Tex. Ct. App. 2002); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 288 (Tex. Ct. App. 2000) ("The foreseeability of economic loss … is a standard that sweeps too broadly in a professional or commercial context, portending liability that is socially harmful in its potential scope and uncertainty." (citation omitted)).[10]  Here, CrowdStrike does not owe Plaintiffs a duty in tort for their claimed economic losses.[11]

---

[10] Plaintiffs' cited cases involving the economic loss rule do not compel a different outcome—those two cases involved personal injuries or property damages.  Opp. at 18; *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283 (5th Cir. 2016); *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716 (Tex. 2014).  The remainder of Plaintiffs cases did not involve the economic loss rule. *See* Opp. at 15–17 (citing *Alcoa, Inc. v. Behringer*, 235 S.W.3d 456 (Tex. Ct. App. 2007); *Collins v. Pecos & N.T. Ry.*, 212 S.W. 477 (Tex Comm'n App. 1919); *In re Signal Int'l, LLC*, 579 F.3d 478 (5th Cir. 2009); *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983); *Osuna v. S. Pac. R.R.*, 641 S.W.2d 229 (Tex. 1982); *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778 (Tex. 2001)).

[11] Plaintiffs suggest the economic loss rule applies only when the parties have entered into a contract.  Opp. at 18.  Not so.  *See, e.g.*, *Trans-Gulf Corp.*, 82 S.W.3d at 694 (applying economic loss rule to parties who were "contractual strangers"); *Noram Energy Corp.*, 29 S.W.3d at 283–84 (same).

2.    **Plaintiffs Allege Economic Losses.**

Plaintiffs assert the economic loss rule does not apply because their alleged damages include "false imprisonment," and expenses related to new flights, meals, hotels, clothes, medication, ground transportation, "us[ing] accrued paid time off" or "vacation days," spending "additional time and effort attempting to arrange an alternate flight," delayed luggage, and lost wages. Compl. ¶¶ 13, 17–18, 22, 29, 34–37, 39, 44–48, 50, 53–54, 56–58, 61, 63–65, 70–72. These are not personal injuries and go far beyond that exception to the economic loss rule. These claims can be dismissed for two significant reasons.

First, the Court should not countenance Plaintiffs' unsupported assertion of "false imprisonment." *See* Opp. at 19.[12]  Second, Plaintiffs are incorrect that lost wages, delayed or inaccessible luggage, replacing medication, and lost time fall outside the economic loss rule. Opp. at 19. Lost wages are economic in nature. *See Gen. Elec. Co. v. M&M X-Press Serv., Ltd.*, 2008 WL 4747211, at *3 (S.D. Tex. Oct. 27, 2008) (citation omitted) ("Economic loss is 'a monetary loss such as lost wages or lost profits' as 'opposed to physical injury or property damage.'"). Plaintiffs have not alleged how a delay in accessing their luggage has caused them harm, other than to claim they had to purchase replacement items. *See* Compl. ¶¶ 29, 36–37, 46–47. The alleged cost of replacing goods is an economic loss. *See Trans-Gulf Corp.*, 82 S.W.3d at 695 (costs related to reimbursement for replacing parts were economic damages). Finally, as to lost time, courts have held that this purported harm is economic in nature and is subject to the economic loss

---

[12] False imprisonment requires "(1) willful detention; (2) without consent; and (3) without authority of law." *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Nowhere in the Complaint do Plaintiffs assert a "false imprisonment" cause of action or that CrowdStrike willfully detained Plaintiffs such that they were not free to leave. *See, e.g.*, *id.* at 645 (no false imprisonment where "no threat was made to detain" plaintiff to particular area); *Wray v. Home Depot U.S.A., Inc.*, 2021 WL 1238298, at *3 (N.D. Tex. Apr. 2, 2021) (no false imprisonment where plaintiff did not allege "she was physically restrained" or "threatened").

rule. *See Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021) (value of lost time constituted economic loss; noting "courts have found that the cost of lost time is an economic harm not recoverable under the economic loss doctrine"); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 795 (W.D. Wis. 2019) ("[C]laims for inconvenience or lost time fall squarely within the economic loss doctrine.").[13]

### E.    Plaintiffs' Allegations Do Not Establish Public Nuisance.

Plaintiffs do not dispute that in jurisdictions following the Restatement of Torts, including Pennsylvania and Ohio, a public nuisance requires an "unreasonable interference with a right common to the general public" and assert this standard is met, arguing (1) a "public right" was implicated because there is a "right to travel" and (2) there was an "unreasonable interference" because there was a "significant interference" with the public's comfort or convenience. Opp. at 19–23. Plaintiffs' allegations do not support either prong.

Plaintiffs argue there is a public "right to travel," but Plaintiffs, in essence, argue they have a right to be free from airline delays. *See* Opp. at 21–22. There is no such public right. All of Plaintiffs' cases related to a right to travel involve permanent physical obstructions to travel or the environment. Opp. at 21–22.[14] Despite the many decades of commercial airline travel, Plaintiffs

---

[13] Murphy alleges a migraine from sleep disruption, del Rio alleges "neck and back" pain from sleeping on benches, and Aguayo alleges "anxiety, chest pains, and headaches" due to stress. Compl. ¶¶ 15, 24, 57. To the extent these harms are personal injuries, they do not save Plaintiffs' negligence claims. Even if a duty was owed for non-economic harms—it was not—that only three of the five named Plaintiffs can assert ostensibly non-economic harms underscores the negligence claims cannot be maintained on a class basis. *See, e.g.*, *Teunissen v. Orkin Exterminating Co.*, 484 N.W.2d 589, 591–92 (Iowa 1992) (company owed no duty to plaintiff where services were performed for third party).

[14] *Commonwealth v. VonBestecki,* 30 Pa. D. & C. 137, 141 (C.P. 1937) (holding towers were public nuisance because of "probable injury to the persons and property of aeronauts and the air-traveling public"); *State v. Kaster,* 35 Iowa 221 (Iowa 1872) ("noxious exhalations" from animal enclosure); *Sisco v. Iowa-Ill. Gas & Elec. Co.,* 368 N.W.2d 853 (1985) (utility pole); *Jamail v. Stoneledge Condo. Owners Ass'n,* 970 S.W.2d 673 (Tex. Ct. App. 1998) (gate on public way); *Kjellander v.*

cite no cases applying public nuisance law to airline travel. This is because there is no public right to be free from the common occurrence of airline travel delays.

Plaintiffs also fail to allege an "unreasonable interference" with a right to travel. Plaintiffs argue "CrowdStrike substantially interfered with the public's comfort and convenience" by "crashing millions of computers" in "several sectors of our economy." Opp. at 21. But the Complaint alleges only that certain individuals' flights were delayed or cancelled.

Finally, Plaintiffs' allegations do not establish a public nuisance under Iowa law, which requires "unlawful or anti-social conduct." Opp. at 20 n. 2.[15] Plaintiffs concede CrowdStrike has not violated any law and fail to allege any "anti-social" conduct. The modern definition of "antisocial" is "averse to the society of others" or "hostile or harmful to organized society."[16] Plaintiffs argue the CrowdStrike Outage "interrupted the lives of millions of travelers," Opp. at 22, but these allegations do not suggest the CrowdStrike Outage was unsociable or harmful to organized society, and Plaintiffs' cited cases do not help their position. Opp. at 22.[17]

### III.     CONCLUSION

CrowdStrike respectfully requests the Court dismiss Plaintiff's Complaint in its entirety.

---

*Smith,* 652 S.W.2d 595 (Tex. Ct. App. 1983) (fence on road); *Chang v. City of Milton*, 2023 Ga. State LEXIS 3683, *10 (Ga. St. Ct. Sept. 21, 2023) (planter on road); *Town of Ackley v. Cent. States Elec. Co.,* 214 N.W. 879, 880 (Iowa 1927) (electric power wires "cross[ing] several streets").
[15] Plaintiffs incorrectly claim Iowa, Ohio, and Pennsylvania all have the same public nuisance standard. Opp. at 20. Unlike Ohio and Pennsylvania, the Iowa Supreme Court has held public nuisance requires (1) unlawful or anti-social conduct that (2) injures (3) a substantial number of people. *Pottawattamie Cnty. v. Iowa Dep't of Env't Quality*, 272 N.W.2d 448, 453 (Iowa 1978).
[16] Antisocial, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/antisocial (accessed Apr. 9, 2025).
[17] *Sisco*, 368 N.W.2d at 853, involved a motor collision with permanent utility pole wires, and *Kuehl v. Sellner,* 965 N.W.2d 926 (Iowa Ct. App. 2021), involved a long-standing exotic animal zoo that treated animals in a distressing manner—not a temporary software outage and flight delays. The remaining cases Plaintiffs cite do not analyze Iowa public nuisance law or "antisocial" conduct. *See Cincinnati v. Beretta U.S.A. Corp.,* 768 N.E.2d 1136 (Ohio 2002) (Ohio law and Restatement); *Graham Oil Co. v. BP Oil Co.,* 885 F. Supp. 716 (W.D. Pa. 1994) (Restatement).

Dated:  May 7, 2025                          Respectfully submitted,

                                             */s/ Isabelle Ord*
                                             Isabelle Ord (admitted *pro hac vice*)
                                             California Bar No. 198224
                                             DLA Piper LLP (US)
                                             555 Mission Street
                                             San Francisco, CA 94015
                                             415-836-2500 – phone
                                             415-836-5201 – fax

                                             John M. Guaragna
                                             Texas State Bar No. 24043308
                                             John.Guaragna@us.dlapiper.com
                                             DLA Piper LLP (US)
                                             303 Colorado Street, Suite 3000
                                             Austin, TX  78701-4653
                                             512-457-7000 – phone
                                             512-457-7001 – fax

                                             Jeffrey DeGroot (admitted *pro hac vice*)
                                             Washington Bar No. 46839
                                             DLA Piper LLP (US)
                                             701 Fifth Avenue, Suite 6900
                                             Seattle, WA 98104
                                             206-839-4800 – phone
                                             206-494-1821 – fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing via electronic mail

to all counsel of record.  Any other counsel of record will be served by first class U.S. mail.

*/s/ Isabelle Ord*
Isabelle Ord (admitted *pro hac vice*)
California Bar No. 198224
DLA Piper LLP (US)
555 Mission Street
San Francisco, CA 94015
415-836-2500 – phone
415-836-5201 – fax
