IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JULIO DEL RIO, JACK MURPHY, STEVEN BIXBY, ALICIA KIRBY, PHILIP KIRBY, JENNIE AGUAYO, CHRISTOPHER HARLAN, and SARA HARLAN, *individually and on behalf of all others similarly situated*, | § § § § § § § | |
| Plaintiffs, | § § | 1:24-CV-881-RP |
| v. | § § | |
| CROWDSTRIKE, INC., and CROWDSTRIKE HOLDINGS, INC., | § § § § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants CrowdStrike, Inc. and Crowdstrike Holdings, Inc.'s ("Defendants") Motion to Dismiss, or In the Alternative, to Strike, (Dkt. 31). Plaintiffs Julio del Rio, Jack Murphy, Steven Bixby, Alicia Kirby, Philip Kirby, Jennie Aguayo, Christopher Harlan, and Sara Harlan ("Plaintiffs"), individually and on behalf of all others similarly situated, filed a response, (Dkt. 33), Defendants filed a reply, (Dkt. 38), and Plaintiffs filed a sur-reply, (Dkt. 42). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that Defendants' motion should be granted.

## I. BACKGROUND

Plaintiffs sued CrowdStrike alleging harms incurred after a faulty software update by CrowdStrike caused computer outages among airlines and airports, leading to flight delays and cancellations around the country. (Am. Compl., Dkt. 23). Plaintiffs assert various state-law claims for negligence and public nuisance, (*id.* at 44–55), and the Complaint makes the following allegations. CrowdStrike's "Falcon platform," which is "used by airlines and airports," is software

1

that "helps protect systems against potential threats in a bid to minimize cybersecurity risks." (*Id.* at 16, 34). The airlines Plaintiffs used "rely heavily on cyber and network support to operate the[ir] essential systems." (*Id.* at 34). "CrowdStrike's airline customers and their passengers, including Plaintiffs and other Class members, relied on CrowdStrike's performance of its ongoing services to keep CrowdStrike's airline customers' airplanes flying as scheduled, among other things." (*Id.* at 52). CrowdStrike's Falcon platform released an update on July 19, 2024, which "contained . . . bugs, errors, and defects that caused computers running Microsoft Windows to repeatedly crash," resulting in airline flights being delayed or cancelled (the "CrowdStrike Outage"). (*Id.* at 25). It was CrowdStrike's "failure to properly develop, test, and deploy the Falcon update" that "resulted in the delay or cancellation of Plaintiffs' and Class members' flights." (*Id.* at 3). The CrowdStrike Outage "affected many separate [airline] systems, such as those used for calculating aircraft weight, checking in customers, and phone systems in [airline] call centers." (*Id.* at 38).

Plaintiffs, citizens of California, Ohio, Pennsylvania, Iowa, and Nevada, allege they experienced flight delays or cancellations on a variety of airlines due to the CrowdStrike Outage. Plaintiff Julio del Rio, who experienced travel disruptions in Hawaii and California, seeks expenses for booking new flights, Uber rides, and "us[ing] accrued paid time off to miss an additional day of work." (*Id.* at 4–5). Plaintiff Jack Murphy experienced delays in South Carolina and Georgia, causing him to spend "additional time and effort attempting to arrange an alternate flight," costing him gas money, and adding "wear" to his car because he "could not hire an Uber" after his late arrival time. (*Id.* at 5–6). Plaintiff Steven Bixby experienced delays in Pennsylvania and Illinois and later had "to return to the [Texas] airport to retrieve his luggage;" in total his flights took over seventeen hours although they were scheduled to take nine. (*Id.* at 6–7). Plaintiffs Alicia Kirby and Philip Kirby had their flights delayed in Minnesota, which led to expenses for new flights and hotels, clothes, toiletries, medication, Lyft rides, and "us[ing] vacation days for the days of work [they] missed." (*Id.*

at 7−9). Plaintiff Jennie Aguayo's flight was delayed in Hawaii. (*Id.* at 10−11). She incurred expenses for purchasing new flights and meals, lost wages from missing work, and experienced anxiety, chest pains, and headaches. (*Id.*). Plaintiffs Christopher Harlan and Sara Harlan, flying from the Dominican Republic to Iowa via Georgia, incurred expenses in Georgia for lodging, Uber rides, parking, a house-sitter, and meals. (*Id.* at 11−13).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338

3

(5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

Defendants argue that Plaintiffs' claims are preempted by the federal Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713, (Defs.' Mot. Dismiss, Dkt. 31, at 7), and the Court agrees. To prevent a patchwork of inconsistent state laws governing the airline industry, Congress included a preemption provision in the ADA, which expressly preempts state-law claims related to airline services, like Plaintiffs' claims. 49 U.S.C. § 41713(b)(1) (explaining that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier"). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378−79 (1992).

In *Morales*, the Supreme Court interpreted the phrase "relating to" in the ADA's preemption provision broadly, concluding all "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted" by the ADA. 504 U.S. at 384. Interpreting *Morales*, the Fifth Circuit has held that "[a]ny state law, including state common law, 'having a connection with or reference to' airline prices, routes, or services is preempted unless the connection

4

or reference is 'too tenuous, remote, or peripheral.'" *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010) (quoting *Morales*, 504 U.S. at 390). "[A]irline services" include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995). "Plaintiffs' claims 'relate to' [airline] services if they have a connection with or reference to them." *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005).

As an initial matter, Plaintiffs' claims would be preempted if they were brought against the airlines themselves. Plaintiffs' claims, which concern the impacts of flight delays and cancellations and the failure of airlines to adequately reschedule or compensate for them, relate directly to "airline services" such as "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself," which are preempted. *Hodges*, 44 F.3d at 336. Along those lines, another court recently held that class-action common-law and state consumer protection law claims against an airline for harms caused by the CrowdStrike Outage and resulting delays and lost payments toward travel and airline tickets could not proceed because the ADA preempts them. *Bajra v. Delta Air Lines, Inc.*, No. 1:24-CV-3477-MHC, 2025 WL 1527076, at *12 (N.D. Ga. May 6, 2025). In *Bajra*, the court collected cases that found preemption where plaintiffs brought similar state tort law claims "related to refunds, reimbursements, and billing practices." *Id.* at 12; *see also Banga v. Gundumolgula*, No. 2:13-CV-00667-MCE, 2013 WL 3804046, at *3 (E.D. Cal. July 19, 2013), *report and recommendation adopted*, No. 2:13-CV-0667-MCD-CKDPS, 2013 WL 11332786 (E.D. Cal. Sept. 12, 2013) (finding that claims arising out of the airline's refund policy "are part of the reservations and ticketing process," which constitute a "service"); *Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de C.V.*, 529 F. Supp. 3d 856 (N.D. Ill. 2021) (finding claim preempted after the plaintiff alleged that the airline cancelled the plaintiff's ticket due to the COVID-19 pandemic, and when she sought a refund for the purchase price of the ticket, the airline

5

refused and offered a travel credit instead); *Miller v. Delta Air Lines, Inc.*, No. 4:11-CV-10099-JLK, 2012 WL 1155138, at *2 (S.D. Fla. Apr. 5, 2012) (finding non-contractual claims that "arise from [an airline's] failure to inform customers of their right to reimbursement . . . for lost, damaged, or delayed baggage" constitute claims regarding "services" provided by the airline). Like in these cases, the Court concludes that Plaintiffs' claims concern the services they received from their respective airlines, i.e., the ticketing, re-booking, baggage services, and services such as hotel stays and meals afforded to them during their delays at the airport, and their suit would be preempted if brought against the airlines directly.[1]

That the Plaintiffs here bring their suit against CrowdStrike, rather than against the airlines themselves, does not prevent ADA preemption. Plaintiffs argue that CrowdStrike does not provide a service "related to" airline rates, routes, and/or services because CrowdStrike is a cybersecurity firm offering the same services across other sectors, not to airlines only. (Resp., Dkt. 33, at 4–5). But "ADA preemption is not limited to claims brought directly against air carriers"; rather, claims against entities other than airlines may also be preempted when they relate to an airline "price, route, or service." *See, e.g., Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 287 n.8 (5th Cir. 2002). As one example, in *In re American Airlines, Inc., Privacy Litigation*, the court dismissed state-law claims against an airline's website vendor, which allegedly disclosed passengers' information, and the research companies that received the information. 370 F. Supp. 2d at 556–57. The plaintiffs' state-

---

[1] It is true that some claims are "too tenuous, remote, or peripheral" to be preempted by the ADA. *Morales*, 504 U.S. at 390; *see, e.g., Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 495 (6th Cir. 1999) (finding an employment discrimination suit's relation to airline services too tenuous to require preemption); *Goodspeed Airport LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 212 (2d Cir. 2011) (finding state and local environmental land-use laws too tenuous, remote, or peripheral to be preempted by ADA). But nothing suggests CrowdStrike's services are tenuous or peripheral. Rather, Plaintiffs allege that the airlines with which Plaintiffs contracted "rely heavily on cyber and network support to operate the[ir] essential systems." (Am. Compl., Dkt. 23, at 34). So too, they argue that airline passengers and customers "relied on CrowdStrike's performance of its ongoing services to keep CrowdStrike's airline customers' airplanes flying as scheduled, among other things." (*Id.* at 52). This is not akin to an employment discrimination suit or an environmental regulation, where courts have found only a tenuous or peripheral connection to airline services; by Plaintiffs' own allegations, the services CrowdStrike offers are core to the provision of airline services.

law tort claims against airline vendors were "preempted because they have a connection at least with [the airline's] ticketing service, including the reservation component." *Id.* at 564. The court noted that the vendor "play[ed] a role in maintaining [the airline's] website," *id.*, and reasoned that the claims "are based on conduct that relates to [the airline's] ticketing service and its reservation component and for that reason are preempted," *id.* at 564–65.

Similarly, in *Pica v. Delta Air Lines, Inc.*, customers sued an airline and its vendor, which provided voice and chat services for sales and support to the airline. No. CV 18-2876-MWF, 2019 WL 1598761, at *1 (C.D. Cal. Feb. 14, 2019). Plaintiffs alleged negligence relating to a data breach involving customers who booked flights or used the chat services. *Id.* at *2–3. The court granted the vendor's motion to dismiss and held that ADA preemption can apply to an airline vendor, including one that does not exclusively provide services to airlines. *Id.* at *9. "[I]t is irrelevant that [the vendor] offers services to [the airline] and numerous other companies. Plaintiffs' claims are still preempted to the extent the services offered by [the vendor] relate to [the airline's] 'rates, routes, or services.'" *Id.* Because the plaintiffs' claims against the vendor related to the airline's "sales and support" services, they were preempted. *Id.*

Plaintiffs' claims against CrowdStrike are like those in *Pica* and *In re American Airlines, Inc.* and "relate to" airline services, despite CrowdStrike providing cybersecurity services in other sectors as well as to airlines. *See Pica*, 2019 WL 1598761, at *9 ("Plaintiffs cite to no authority—nor can the Court locate any—suggesting that ADA preemption applies to agents of airlines only where those agents provided services exclusively to airlines. In fact, many other courts have concluded just the opposite."); *see also Gordon v. Amadeus IT Grp., S.A.*, 194 F. Supp. 3d 236, 246 (S.D.N.Y. 2016) (holding ADA preempted airline ticket purchasers' state-law claims against non-airline technology providers). Indeed, Plaintiffs allege CrowdStrike's cybersecurity systems "affected many separate [airline] systems, such as those used for calculating aircraft weight, checking in customers, and phone

7

systems in [airline] call centers." (Am. Compl., Dkt. 23, at 38). And, as described above, Plaintiffs seek damages relating to their receipt of airline services, including delayed or cancelled flights, along with compensation for hotel, transportation, and other expenses allegedly incurred because of their cancelled or delayed flights. The Court finds that the ADA preempts Plaintiffs' state-law claims against CrowdStrike, as a cybersecurity firm whose functions at issue here relate to airline services.

Next, Plaintiffs' claims are also preempted because they would affect airline regulation and have a "significant effect" on airline services. The Fifth Circuit in *Hodges* explained that state tort law claims are preempted by the ADA when they would have a "forbidden significant effect" on airline rates, routes, or services contrary to the purpose of the ADA. *Hodges*, 44 F.3d at 339. While the Fifth Circuit did not define the term specifically, it made clear that state-law claims create significant effects when they "result in significant de facto regulation of airline . . . practices." *Id.* In *Witty v. Delta Air Lines, Inc.*, it also elaborated that a significant effect arises where application of state law could produce an "economic effect on [airline] prices." 366 F.3d 380, 383 (5th Cir. 2004). Courts have also found preemption based on significant effects where state laws could "effectively dictate how [airlines] manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline." *In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d at 564. Another court has explained that laws are preempted when they "substitute[] state law for market forces in direct contravention of the goal of deregulation" and "require[] the airline to offer services significantly different than what the market might dictate." *A.C.L. Computs. & Software, Inc. v. Fed. Express Corp.*, No. 15-cv-04202-HSG, 2016 WL 946127, at *2 (N.D. Cal. Mar. 14, 2016).

Here, the Court finds Plaintiffs' claims would have such a significant effect on airline services. Plaintiffs seek to impose tort liability on an airline cybersecurity vendor for nationwide damages related to air travel disruptions. The Court concludes that the airlines would experience

8

significant effects from the enforcement of state tort law in this manner on CrowdStrike, akin to federal regulation, because cybersecurity vendors would have an incentive to change their practices and services for airlines specifically. The vendors would, if their potential liability in case of errors in the context of airlines extended to disruptions of airline services, also likely have a strong incentive to charge more for their services to offset that risk of liability. This would, in turn, have a significant effect on airline services and could also have an economic effect on airlines.

The Fifth Circuit has recognized one additional distinction: personal injury claims "caused by the operation and maintenance of aircraft," and not other airline services, are not preempted. *See Hodges*, 44 F.3d at 336 ("Neither the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption."); *Witty*, 366 F.3d at 382–83 (holding that the ADA preempted passenger personal injury claim arising from blood clot caused by insufficient leg room because requiring airlines to provide more leg room relates to airline prices, not the operation and maintenance of the aircraft); *see also Day v. SkyWest Airlines*, 45 F.4th 1181, 1189 (10th Cir. 2022) (denying that the ADA preempted personal injury claims and noting the difference between these claims and claims related to economic competition); *Charas v. TWA*, 160 F.3d 1259, 1266 (9th Cir. 1998) (same). In other words, "everyday personal injury claims" resulting from aircraft operation or maintenance are not preempted, and claims that have an impact on "future service offerings," are. *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 455−56 (1st Cir. 2014); *see also Malik v. Cont'l Airlines Inc.*, 305 F. App'x 165, 169 (5th Cir. Nov. 10, 2008) (holding that the ADA preempted property damage claims because they related to airline personnel's mishandling of her bags, "not damage from the way in which the plane was flown"); *In re Air Disaster*, 819 F. Supp. 1352, 1363 (E.D. Mich. 1993) (finding plaintiffs' negligence claims against airline relating to an airplane crash not preempted). That is because there is a separate federal statute requiring airlines to carry personal injury insurance.

Congress specifically requires air carriers to carry insurance "sufficient to pay . . . for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft." *Day*, 45 F.4th at 1187 (quoting 49 U.S.C. § 41112(a) (2025)). Plaintiffs do not claim they were injured because of how an aircraft was operated or maintained. Rather, because their claims concern the airlines' services and would have an impact on future service operations, they are preempted.

In arguing that their case is like personal injury cases where courts have not found a forbidden significant effect, Plaintiffs discuss *Day* and *Tobin*. (Pls.' Resp., Dkt. 33, at 13). Taking guidance from these cases, however, the Court finds that Plaintiffs' claims are more like the *Tobin* claims, which were preempted, than the *Day* claims, which were not. In *Day*, a plaintiff brought claims for negligence and breach of contract against an airline for injuries she suffered when an employee had negligently pushed a beverage cart down the aisle of a plane. *Day*, 45 F.4th at 1182–83. The *Day* court held that "a finding in Day's favor would not govern any central matters of [the airline's] services." *Id.* at 1190. In *Tobin*, an air carrier wrongly delivered a package containing marijuana to the plaintiff due to a labeling error at the air carrier, which she argued caused her emotional distress. *Tobin,* 775 F.3d at 449–50. The First Circuit held that the *Tobin* plaintiff's claims were preempted: they related to the air carrier's "package handling, address verification, and delivery procedures." *Id.* at 454. The court then analyzed whether the claims would have a forbidden significant effect on the air carrier, finding that where the claim "could effect fundamental changes in the carrier's current or future service offerings, the plaintiff's claims are preempted by the ADA." *Id.* Like in *Tobin*, Plaintiffs' claims relate to the computer systems and cybersecurity procedures of airlines and the way that airlines, by policy, served customers nationwide in the aftermath of a computer outage, and could have significant effects on airlines.

Finally, the Court notes that Plaintiffs' intended "effect" is to "help[] prevent future mass shutdowns of computer systems across the world." (Pls.' Resp., Dkt. 33, at 13). In other words, Plaintiffs acknowledge their suit could change cybersecurity protocols in airline services or at least is intended to do so. But in the context of airlines, this is the kind of tort claim that is "connected with," and relates to, airline prices, routes, or services. *Morales*, 504 U.S. at 383; 49 U.S.C. § 41713(b)(1) (2025). Plaintiffs' proposed application of state tort law could either "interfere[] with uniform national policies regarding airline prices, routes, or services" or have "economic effects that effectively limit airlines' choices regarding their prices, routes, and services." *Day*, 45 F.4th at 1186. For the reasons described above, the Court concludes that the ADA preempts Plaintiffs' claims and Defendants' Motion to Dismiss should be granted.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 31), is **GRANTED**.

**SIGNED** on June 18, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE